# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 50090 | **DATE** | 2/11/2002 |
| **CASE TITLE** | Fink vs. Winnebago County Sheriff, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Defendants' motions for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, the Winnebago County Sheriff's and Correction Medical Services' separate motions for summary judgment are granted. Fink's motion to reconsider is denied, and her "motion to determine the relevance of substandard health services practices within the Winnebago County Jail to the instant case" is denied as moot. The court also reaffirms its previous dismissal of defendant Crusader Clinic and Count II against all defendants. This case is hereby dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| X | Notices mailed by judge's staff. | | FEB 12 2002 | | 125 |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| X | Mail AO 450 form. | | docketing deputy initials | | |
| X | Copy to judge/magistrate judge. | | 2-12-02 | | |
| | | | date mailed notice | | |
| /LC | courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK,
02 FEB 11 PM 4: 23
FILED-WD

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

SHARON LYNN FINK,                      )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )   No. 99 C 50090
                                       )
WINNEBAGO COUNTY SHERIFF,              )
CORRECTION MEDICAL SERVICES,           )
INC., and CRUSADER CLINIC,             )
INC.,                                  )
                                       )
          Defendants.                  )

**DOCKETED**

**FEB 1 2 2002**

## MEMORANDUM OPINION AND ORDER

### I.   INTRODUCTION

Plaintiff, Sharon Lynn Fink, has filed a five-count fourth-
amended complaint against defendants, Winnebago County Sheriff
("Sheriff"), Correction Medical Services, Inc. ("CMS"), and
Crusader Clinic, Inc.  Early on in the case, the court dismissed
Crusader Clinic and Count II against the other defendants.  What
remains is the following:  in Count I, Fink alleges various
constitutional claims under 42 U.S.C. § 1983, such as the Sheriff
and CMS terminating her in retaliation for protected speech under
the First Amendment, interfering with her freedom of religion
under the First Amendment, and depriving her of her property
interest in continued employment under the Fourteenth Amendment;
in Count III, she alleges the Sheriff and CMS terminated her
because of her age, in violation of the Age Discrimination in

Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); in Count IV,
she alleges CMS paid her less than male employees for equal work,
in violation of the Equal Pay Act, id. § 206(d) ("EPA"); and in
Count V, she advances various claims against the Sheriff and CMS
under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §
2000e et seq. ("Title VII"), including sex discrimination, sexual
harassment, and retaliation. Jurisdiction and venue are proper
pursuant to 28 U.S.C. §§ 1331, 1343, 1391(b) (§ 1983), 29 U.S.C.
§§ 216(b) (EPA), 626(c) (ADEA), and 42 U.S.C. § 2000e-5(f)(3)
(Title VII). Before the court are the Sheriff's and CMS's
separate motions for summary judgment, filed pursuant to Federal
Rule of Civil Procedure 56, Fink's "motion to reconsider the
striking of plaintiff's response," and Fink's "motion to
determine the relevance of substandard health services practices
within the Winnebago County Jail to the instant case."[1]

## II.  BACKGROUND

### A.  Local Rule 56.1

On November 5, 2001, the court sua sponte struck Fink's
response to the Sheriff's and CMS's motions for summary judgment
in its entirety as not complying with Local Rule ("LR") 56.1. In
particular, the court noted the absence of any supporting
memorandum of law accompanying her response. Upon further

---

[1] The court understands this last motion to be akin to a
motion in limine. In light of the court's rulings on defendants'
motions for summary judgment, Fink's pseudo motion in limine is
denied as moot.

-2-

consideration, the court is convinced this was an appropriate reaction to Fink's submission.

To begin, Fink still has not, even in her motion to reconsider, tendered, or said she *would* tender if given the chance, a brief in support of her response to the summary judgment motions. Instead, Fink refers the court to certain paragraphs in her response (to be exact, four paragraphs out of a total of 142), where she cites a few cases that supposedly relate to the fact at hand. And in one of these paragraphs (CMS LR 56.1(a) Pl. Resp. ¶ 2) is found the following, rather remarkable passage: "Plaintiff's Supporting Memorandum of Law consists of, *inter alia*, the case authority and argument of all her pre-trial memorandum [sic] and appearances in [sic] behalf of Plaintiff, Sharon Lynn Fink, whether in support of, or opposition to, any particular Motion; and the case authority cited therein . . . ." In her motion to reconsider, Fink even attaches a copy of a brief she filed in response to an earlier motion to dismiss brought under Rule 12(b)(6).

The court does not know where to begin to explain why this approach is completely unacceptable. First, the fact that Fink has embedded legal argument in her response to defendants' statements of fact is exactly why the court will *not* consider it. The purpose of LR 56.1 is to identify for the court which *factual* matters are at issue; it is not an opportunity to engage in legal argument or cite case authority. See <u>Bordelon v. Chicago Sch.</u>

Reform Bd. of Trs., 233 F.3d 524, 528-29 (7th Cir. 2000).

Second, what little legal authority Fink's counsel provides is wholly inadequate – he either simply cites a case with no further explanation or analysis, cites a case with only a vague reference to the proposition it is being cited for, or cites a case for only the most basic and rudimentary principle. Third, and perhaps most incredibly, does Fink's counsel seriously expect the court to wade through every motion, brief, and other filing he has submitted throughout this nearly three year-old case, which comprises some three volumes in the clerk's files, along with any personal appearances he has made during that time, to determine what his legal arguments are on the issues raised in defendants' summary judgment motions? To even suggest such a thing is laughable. See United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs" – or, worse yet, hunting for truffles buried not in a brief at all but, rather, three years of filings and personal appearances.). Finally, even if the court were to indulge Fink's counsel by doing this (which it will not), what good would it possibly do? All of the "pre-trial memorandum and appearances" Fink's counsel refers to predate defendants' motions for summary judgment, so any argument contained in the former naturally would not address the factual issues raised in the latter, making the former essentially worthless for present purposes.

As for the response itself, the court finds it too does not comply with LR 56.1. Most notably, many of the denials Fink makes in her response either lack a citation to the record, contain a citation to a deposition or document not in the record, or, when the record is properly cited, the portion of the record referenced does not actually support the denial or assertion made. At other times, Fink makes it nearly impossible for the court to even verify she has accurately cited the record by referring to a deposition or set of documents in general, without providing specific page numbers. In addition, some of her "responses" are not responsive to defendants' factual assertions at all, but simply take off on tangents the court is often at a loss to follow. Finally, the response is sprinkled throughout with self-serving and unsupported legal conclusions. For all these reasons, Fink's LR 56.1(b) response violates both the letter and spirit of LR 56.1. See Greer v. Board of Educ., 267 F.3d 723, 727 (7th Cir. 2001) ("[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes.'") (citation omitted); Brasic v. Heinemann's Inc., 121 F.3d 281, 285 (7th Cir. 1997) (it is not district court's task to "scour the record in search of a genuine issue of triable fact" because court relies on nonmoving party to identify with "reasonable particularity the evidence that precludes

-5-

summary judgment"; LR 56.1 requires "*specific* references to affidavits and parts of the record, not to entire affidavits") (emphasis in original).

As a result, the court reaffirms its prior decision to strike Fink's response to defendants' LR 56.1 statements of fact in its entirety. See Hedrich v. Board of Regents of the Univ. of Wis. Sys., 274 F.3d 1174, 1178 (7th Cir. 2001); Bordelon, 233 F.3d at 528-29. Fink's motion to reconsider that decision is therefore denied.

## B.   **Facts**[2]

From approximately 1989 until January 5, 1998, Crusader Clinic provided health care services to the inmates in the Winnebago County Jail ("Jail"). (CMS LR 56.1(a) ¶ 5) During that time, between 1989 and 1992, and again from 1994 until January 4, 1998, Crusader Clinic employed Fink as a licensed practical nurse ("LPN") to work at the Jail. (Id. ¶ 6) January 5, 1998, however, marked the date of a new contract between Winnebago County, the Sheriff, and CMS. (Id. ¶ 24) Under the contract, CMS took over the provision of health care services at

---

[2] Where, as here, the nonmoving party's response to the moving parties' statements of fact has been stricken because of noncompliance with LR 56.1, the court departs from its usual posture of construing all facts in favor of the nonmoving party; rather, it accepts as true all material facts contained in the moving parties' LR 56.1(a) statements. See Brasic, 121 F.3d at 284; see also N.D. Ill. R. 56.1(b)(3)(B). Thus, the court accepts as true all material facts in the Sheriff's and CMS's LR 56.1(a) statements of fact that are supported by citations to the record. See Brasic, 121 F.3d at 284.

-6-

the Jail from Crusader Clinic for a one-year term, lasting until
January 4, 1999. (Sheriff LR 56.1(a) ¶¶ 2-4) Shortly before the
January 5 effective date, Fink applied with and was hired by CMS
to continue working as an LPN at the Jail. (CMS LR 56.1(a) ¶¶
42-43) Her first day as a CMS employee coincided with the
January 5, 1998 effective date. (Id. ¶¶ 11, 43)

Whenever CMS hired someone to work at the Jail, it was
required to obtain a security clearance from its administrative
liaison with the Jail, as a person without security clearance was
not permitted access to the Jail. (Id. ¶¶ 37, 39) Consistent
with this policy, Fink understood her employment with CMS was
contingent upon her maintaining the necessary security clearance.
(Id. ¶¶ 61, 62) On March 20, 1998, however, Winnebago County
Deputy Sheriff Major Gary Arbisi revoked Fink's security
clearance. (Id. ¶ 98; Sheriff LR 56.1(a) ¶ 19) This, in turn,
led to CMS terminating Fink's employment. (CMS LR 56.1(a) ¶ 100)

What immediately caused Arbisi to revoke Fink's security
clearance was a series of incidents witnessed by Corrections
Officer Eddie Houi on March 20, 1998. On that day, Officer Houi
received a number of complaints from various inmates at the Jail
about the level of medical care they were receiving from CMS.
(Sheriff LR 56.1(a) ¶ 32(B)) They claimed CMS was providing
inadequate care and attributed their beliefs to comments made to
them by Fink. (Id. ¶¶ 31(D), 32(C)) According to Officer Houi,
the inmates told him that Fink had told them the quality of

-7-

medical care they were receiving from CMS was not as good as what
they had received when Crusader Clinic ran the Jail's medical
department and also told them that CMS was "skimping by" on the
medical services and medications to the inmates.  (Id. ¶ 31(D);
Sheriff Exh., Houi aff. ¶ 9)  According to Officer Houi, the
inmates also said Fink told them she no longer had the time to
provide them with the level of care they should be receiving.
(Sheriff Exh., Houi aff. ¶ 9)  Fink similarly had complained
there were not enough nurses to go around due to overcrowding in
the Jail.  (Sheriff LR 56.1(a) ¶ 22)

As Houi spoke with the inmates, he noticed they became
increasingly upset, unruly, and difficult to control.  (Id. ¶¶
31(C), 32(D))  After Officer Houi reported this behavior to
Arbisi, Arbisi determined Fink's security clearance should be
pulled because her comments to the inmates had incited riotous
behavior and compromised the internal security and safety of the
Jail.[3]  (Id. ¶ 20)  Both Arbisi and Houi later discussed the
situation with Winnebago County Sheriff Richard Meyers, who
ultimately upheld Arbisi's decision.  (Id. ¶ 34)

---

[3]  It is worth reemphasizing that, because Fink's response
to defendants' statements of fact has been stricken, the court
has only defendants' version of events and, specifically, the
Sheriff's explanation for revoking Fink's security clearance.
But even if the court had not stricken her response, Fink
nevertheless offers no evidence to contradict the Sheriff's
stated reason for revoking her clearance.  (Sheriff LR 56.1(a)
Pl. Resp. ¶¶ 20, 31, 32)

### III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Chavez v. Illinois State Police, 251 F.3d 612, 635 (7th Cir. 2001). In this context, the court's function is not to weigh the evidence but merely determine if there is a genuine issue for trial. Vargas-Harrison v. Racine Unified Sch. Dist., 272 F.3d 964, 970 (7th Cir. 2001) (citations and quotations omitted). To do so, the court asks whether there are genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party. Id.

### A. **Section 1983 (Count I)**

#### 1. **CMS**

The most obvious problem with Fink's constitutional claims against CMS is the state action requirement. Besides showing its conduct violated her constitutional rights, Fink must also establish CMS, a private entity, acted under color of state law. See Stagman v. Ryan, 176 F.3d 986, 1003 (7th Cir.), cert. denied, 528 U.S. 986 (1999); Cunningham v. Southlake Ctr. for Mental Health, Inc., 924 F.2d 106, 107 (7th Cir. 1991). To do so, Fink apparently relies on the "joint action" theory, which says a private actor acts under color of state law when it is "a willful

-9-

participant in joint action with the State or its agents."
Dennis v. Sparks, 449 U.S. 24, 27 (1980). A charge of joint
action requires Fink to prove a conspiracy, understanding, or
agreement between the Sheriff and CMS to violate her
constitutional rights. See Stagman, 176 F.3d at 1003;
Cunningham, 924 F.2d at 107. In other words, both the public and
private actors must share a "common, unconstitutional goal."
Cunningham, 924 F.2d at 107.

In this case, the evidence is woefully short of establishing
such joint action between CMS and the Sheriff. When Arbisi found
out about the comments Fink made to the inmates, he confronted
Jackie Potter, Fink's supervisor at CMS and CMS's health care
administrator, and asked Potter to terminate Fink. Potter
refused and even argued with Arbisi, explaining that she had no
grounds to fire Fink. (CMS LR 56.1(a) ¶ 99) As CMS points out,
even Fink herself testified Potter did not want to fire her.
(Id.) At one point, Potter called her supervisor at CMS, who
encouraged her to stick to her original position and not fire
Fink. (CMS Exh. D, Potter dep., p. 114) It was not until Potter
refused to terminate Fink that Arbisi decided to pull Fink's
security clearance. (Id.; CMS Exh. D, Potter dep., pp. 114-15)
As this evidence makes clear, CMS had absolutely no motivation to
terminate Fink, let alone an unconstitutional one. Put another
way, there is simply nothing in the record to suggest CMS shared
with the Sheriff any sort of "common, unconstitutional goal" or

-10-

understanding or agreement to retaliate against Fink for her protected speech, interfere with her exercise of religion, or deprive her of a property interest in continued employment. Alternatively, even assuming Fink could establish CMS acted under color of state law, her constitutional claims nevertheless fail because, as discussed below in subsections 3 – 5, there is insufficient evidence to show Fink suffered any sort of constitutional injury.

### 2. Sheriff

Initially, the Sheriff argues he too cannot be held liable under § 1983 because Fink is unable to establish a "policy or custom" of the Sheriff's department under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), and its progeny. Although he admits he has final policymaking authority for the Sheriff's department, the Sheriff argues his only involvement in the revocation of Fink's clearance was that he "did not rescind or override Arbisi's decision after learning about it." (CMS Memo., p. 6) But that is exactly the point. By having knowledge of Arbisi's conduct and approving it and the basis for it, the Sheriff effectively ratified Arbisi's decision to revoke Fink's security clearance and is, therefore, subject to § 1983 liability. See Baskin v. City of Des Plaines, 138 F.3d 701, 705 (7th Cir. 1998). Nevertheless, the court finds Fink's § 1983 claims falter for more fundamental reasons.

### 3.  **Freedom of Speech / Retaliation**

As a general rule, the government cannot retaliate against its employees (and, the court assumes for purposes of this case, the employees of a private, independent contractor of the government) for engaging in constitutionally protected speech. See Vargas-Harrison, 272 F.3d at 970.  To prove this is what happened to her, Fink must satisfy a two-part test:  her speech or conduct must be (1) constitutionally protected and (2) a substantial or motivating factor in defendants' challenged actions.  See Howitz v. Board of Educ., 260 F.3d 602, 618 (7th Cir. 2001); Wallscetti v. Fox, 258 F.3d 662, 666 (7th Cir. 2001). The first part of this test, commonly referred to as the Connick-Pickering test, requires the court to determine if Fink's speech was constitutionally protected by asking (1) whether Fink spoke as a citizen upon a matter of public concern and, if so, (2) whether Fink's interests as a citizen in commenting upon matters of public concern outweigh the interests of the State in promoting the efficiency of the public services it performs through its employees.  See Gonzalez v. City of Chicago, 239 F.3d 939, 940-41 (7th Cir. 2001) (citing Connick v. Myers, 461 U.S. 138, 147 (1983), and Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)); Kuchenreuther v. City of Milwaukee, 221 F.3d 967, 973 (7th Cir. 2000).  To decide if Fink's speech was on a matter of public concern, the court considers the content, form, context, and motivation for her speech, with content being the

most important.  See Wallscetti, 258 F.3d at 666-67.  Under the
second part of the Connick-Pickering test, the court balances a
variety of factors, weighing the respective interests of the
government and the employee, to determine if the First Amendment
protects the speech at issue.  See Vargas-Harrison, 272 F.3d at
971 & n.2 (listing seven factors).

Although Fink alleges the Sheriff and CMS retaliated against
her for speaking out on a number of topics, only one of them
deserves any attention – the comments she made to the inmates
about how they were not receiving proper medical care from CMS
and how CMS did not have enough nurses for all the inmates due to
overcrowding.[4]  Under the first part of the Connick-Pickering
test, the court has serious doubts whether this speech was on a
matter of "public concern."  First, Fink's speech took the form
of speaking with the inmates directly, rather than attempting to
bring the problem of inadequate medical care to the public's
attention.  See Wallscetti, 258 F.3d at 667.  Second, Fink made
these remarks in the broader context of complaining about what
she perceived to be inferior working conditions after CMS took
over the Jail contract.  See id.  And although overcrowding and

---

[4]  All the other subjects Fink says she complained about
related solely to her own personal beefs about working too many
hours, not having enough time to complete all her tasks, and
other internal personnel matters.  This type of speech has
consistently been found not to be of "public concern."  See,
e.g., Durgins v. City of E. St. Louis, 272 F.3d 841, 842-43 (7th
Cir. 2001); Taylor v. Carmouche, 214 F.3d 788, 792 (7th Cir.
2000), cert. denied, 531 U.S. 1073 (2001).

the quality of medical care within a state-run jail may well be matters of public importance, that does not automatically mean Fink's statements addressed matters of public concern as that term is used in Connick. See Gonzalez, 239 F.3d at 941. Given that Fink's comments about the adequacy of medical care being offered by CMS were more along the lines of an internal employment dispute Fink had with CMS regarding the way CMS ran the Jail's medical department and how this affected *her own* employment situation, the court is inclined to find Fink was not speaking as a citizen upon a matter of public concern. See Walscetti, 258 F.3d at 667; Kuchenreuther, 221 F.3d at 974-75.

But even assuming Fink's speech about the level of medical care inmates at the Jail were receiving was a matter of public concern, the court finds the Sheriff's interests in government efficiency outweighed Fink's First Amendment interests. It is undisputed Fink's comments to the inmates incited riotous behavior and compromised the internal security and safety of the Jail. Given the serious disruption Fink's speech caused among the inmates, the Sheriff's interests in maintaining order was substantial and the court has no trouble finding he was justified in revoking Fink's security clearance. See, e.g., Greer v. Amesqua, 212 F.3d 358, 372 (7th Cir.), cert. denied, 531 U.S. 1012 (2000). The time, place, and manner of Fink's speech (making comments during work hours, inside the Jail, and talking directly to the inmates) also indicate the speech is not

protected. Under the circumstances of this case, the court finds the Sheriff's interests in securing the smooth operation of the Jail and quelling any potential disciplinary problems among the inmates substantially outweighed whatever First Amendment interest Fink had in speaking directly with the inmates about the level of their medical care.

### 4. **Freedom of Religion**

In paragraph 36 of her fourth-amended complaint, Fink makes a passing reference that defendants' actions deprived her of her right to exercise her religion, "as her work was not just a job, but involved ministry to the sick and imprisoned." Presumably this is meant to allege some sort of freedom of religion claim – for example, that the Sheriff interfered with the free exercise of her religion by revoking her clearance. Whatever Fink's theory, it deserves little discussion because, from what the court can make of it, it is completely devoid of factual support or legal merit.

### 5. **Denial of Property Interest**

Another part of Count I seems to be Fink's claim that she had a valid Fourteenth Amendment property interest in continued employment with CMS and the Sheriff deprived her of that interest by revoking her security clearance. To prove such a claim, Fink must show, among other things, that she has a protectible property interest in her job as an LPN with CMS. This means Fink "must have more than an abstract need or desire for it. [S]he

must have more than a unilateral expectation of it. [S]he must, instead, have a legitimate claim of entitlement to it." <u>Miller</u> <u>v. Crystal Lake Park Dist.</u>, 47 F.3d 865, 867 (7th Cir. 1995) (quoting <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)).

Once again, the record before the court contains no evidence to indicate Fink had such a "legitimate claim of entitlement" to her nursing job with CMS. Quite the contrary, all of the evidence (including that cited by Fink in her stricken response) shows Fink was an "at-will" employee. (Sheriff LR 56.1(a) ¶¶ 37-39; CMS LR 56.1(a) ¶¶ 48, 61, 62, 66, 67) Even Fink testified that she herself thought of her employment with CMS as "at will, not lifetime, not guaranteed." (CMS LR 56.1(a) ¶ 67; CMS Exh. B, Fink dep., p. 233) "As an 'at-will employee' [Fink] clearly had no entitlement to continued employment and thus could be dismissed at any time for any reason." <u>Mitchell v. Glover</u>, 996 F.2d 164, 167 (7th Cir. 1993). Lacking any legitimate property interest in her job as a nurse with CMS, Fink's Fourteenth Amendment due process claim necessarily fails.

**B.   ADEA (Count III)**

### 1.   Statute of Limitations

The first obstacle for Fink's ADEA claims is the 300-day statute of limitations within which a plaintiff complaining of age discrimination must file a charge with the EEOC. See 29 U.S.C. § 626(d)(2). Although the charges of discrimination Fink's counsel filled out and signed on Fink's behalf against the

-16-

Sheriff and CMS[5] each bear the date of December 20, 1998, both the Sheriff and CMS have introduced affidavits from EEOC personnel indicating these charges were not actually filed with or received by the EEOC until April 16, 1999. (Sheriff LR 56.1(a) ¶¶ 43, 44; CMS LR 56.1(a) ¶ 120) And even in her now defunct response, Fink offers no competent evidence to rebut this fact. Keeping in mind that Fink's termination on March 20, 1998 was the last possible event giving rise to an actionable ADEA claim against the Sheriff or CMS, Fink's EEOC charge was not filed until some 390 days later on April 16, 1999, well beyond the 300-day limit. As a result, the court dismisses Fink's ADEA claims as time-barred. See Casteel v. Executive Bd. of Local 703 of the Int'l Bhd. of Teamsters, 272 F.3d 463, 466 (7th Cir. 2001).

## 2. **Age Discrimination**

Alternatively, even assuming Fink's ADEA claims are timely, the court finds they are insufficient as a matter of law.[6] Without any direct evidence of age discrimination, Fink is limited to proceeding under the familiar McDonnell Douglas

---

[5] These are attached as exhibits to volume 3 of the Sheriff's summary judgment appendix.

[6] The Sheriff also has raised the issue of whether he could even be considered Fink's employer under the ADEA. In light of the court's ruling on the other issues discussed infra, the court will assume for purposes of this opinion that the Sheriff is Fink's joint or co-employer. See Alexander v. Rush N. Shore Medical Ctr., 101 F.3d 487, 493 n.2 (7th Cir. 1996), cert. denied, 522 U.S. 811 (1997).

burden-shifting method of proving her ADEA claims. Under this
formula, Fink's claims falter on at least the fourth step of her
prima facie case - showing that substantially younger employees
similarly situated to her were treated more favorably. See
Horwitz, 260 F.3d at 610 (setting out prima facie case under
ADEA). Once again, the record is completely lacking in any
evidence of substantially younger (Fink was fifty years-old when
she was terminated) CMS employees working at the Jail who did not
have their clearance revoked after telling the inmates they were
receiving inadequate medical care or making other similar
comments to the inmates, or who were not terminated after having
their clearance revoked. See Radue v. Kimberly-Clark Corp., 219
F.3d 612, 619 (7th Cir. 2000) (stating that "similarly situated"
prong means plaintiff and other employee must possess "shared
common features essential to a meaningful comparison"). But even
assuming arguendo Fink has made out her prima facie case, she is
still unable to demonstrate the Sheriff's stated reason for
pulling her clearance — that her comments to the inmates incited
them and posed a serious threat to the internal security of the
Jail — was a pretext. Even the little evidence Fink points to in
her stricken response does nothing to show the Sheriff did not
honestly believe Fink had breached the Jail's security
regulations. (Sheriff LR 56.1(a) Pl. Resp. ¶ 20) See Clay v.
Holy Cross Hosp., 253 F.3d 1000, 1005-06 (7th Cir. 2001)
(plaintiff cannot show pretext of employer's stated legitimate,

-18-

nondiscriminatory reason so long as employer honestly believed it). Likewise, there is no evidence to suggest CMS's reason for terminating Fink – that her security clearance had been revoked – was anything but the true reason.

## C.  **EPA (Count IV)**

To prove a prima facie case under the EPA, Fink must show (1) CMS paid different wages to employees of the opposite sex; (2) the employees performed equal work requiring equal skill, effort, and responsibility; and (3) the employees have similar working conditions.  See Fyfe v. City of Fort Wayne, 241 F.3d 597, 600 (7th Cir. 2001).  The record in this case makes it obvious Fink cannot establish the second element of this prima facie case – that she and her male counterparts performed "equal work."  According to CMS's undisputed evidence, it employed two males at the Jail during the relevant time frame – one as a registered nurse ("RN") and the other as a physician's assistant. (CMS LR 56.1(a) ¶ 88)  But as Fink herself admitted during her deposition, both an RN and a physician's assistant possess more formal training than an LPN, have more responsibilities, and perform duties an LPN does not.  (Id. ¶¶ 90-92)  In fact, Fink even stated she would expect an RN to make more than an LPN. (Id. ¶ 93)  Given this evidence, the court finds Fink's job as an LPN did not involve equal work requiring equal skill, effort, and responsibility as the RN or physician's assistant positions.  It accordingly dismisses her EPA claim against CMS.

**D.  Title VII (Count V)**

**1.  Statute of Limitations**

For the same reasons stated above regarding Fink's ADEA
claims (see part B-1, supra), the court finds all of Fink's Title
VII claims are likewise time-barred because Fink did not file
timely charges of discrimination against the Sheriff or CMS
within the 300-day statute of limitations.  See 42 U.S.C. §
2000e-5(e)(1); Sharp v. United Airlines, Inc., 236 F.3d 368, 372
(7th Cir. 2001).  But again, even assuming Fink's Title VII
claims are timely, they still fail on the merits, as discussed in
the following sections.

**2.  Sex Discrimination**

Much of what has been said with respect to Fink's ADEA
claims applies equally to her claims that defendants
discriminated against her because of her sex.[7]  First, there is
no evidence in the record defendants treated similarly situated
male employees any differently than they treated Fink –
specifically, that there were male employees who made similar
comments to the inmates but did not have their clearances revoked
or that there were male employees whose security clearances were
revoked but were not terminated.  See Hoffman-Dombrowski v.
Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir.
2001) (setting out elements of prima facie case under Title VII

_____

[7]  The court repeats that it assumes for purposes of this
opinion that the Sheriff is Fink's co-employer under Title VII.

-20-

sex discrimination claim, fourth of which is that similarly
situated employees were treated more favorably).  Second, Fink
again cannot rebut as pretextual the Sheriff's stated reason for
pulling her clearance – that her comments to the inmates were a
security threat – or CMS's stated reason for terminating her –
that her security clearance had been revoked and maintaining such
clearance was a necessary requirement of her job.

### 3.  **Sexual Harassment / Hostile Work Environment**

#### a.  **Sheriff**

Fink's allegations of sexual harassment are limited to one
particular individual – Corrections Officer Alphonse Panico.  It
is undisputed, however, that Officer Panico had no supervisory
authority over Fink (Sheriff LR 56.1(a) ¶ 47), which means the
court must assess the Sheriff's liability under the standard for
coworker harassment.  See Parkins v. Civil Constructors of Ill.,
Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).  To hold an employer
liable for the hostile work environment created by a coworker, a
plaintiff must show the employer was negligent in either
discovering or remedying the harassment.  See Haugerud v. Amery
Sch. Dist., 259 F.3d 678, 696-97, 700 (7th Cir. 2001); Mason v.
Southern Ill. Univ. at Carbondale, 233 F.3d 1036, 1043 (7th Cir.
2000).  In this case, the court finds Fink is unable to meet this
standard as to the Sheriff because she never reported any of
Panico's conduct to anyone within the Sheriff's office or chain
of command.  (Sheriff LR 56.1(a) ¶¶ 47, 50-57, 61-64)  Moreover,

nearly every incident of alleged harassment occurred when no one
else from the Sheriff's office was present. (Id. ¶¶ 58-60) As a
result, there is simply insufficient evidence from which a
reasonable jury could conclude the Sheriff had notice or
knowledge of what Fink considered Panico's sexually harassing
behavior, or even that the Sheriff should have known "wrongdoing
[was] afoot." Hostetler v. Quality Dining, Inc., 218 F.3d 798,
811 (7th Cir. 2000); see also Parkins, 163 F.3d at 1035.

   **b.  CMS**

   As noted previously, the court has assumed for purposes of
this opinion that the Sheriff is a joint employer with CMS under
the ADEA and Title VII.  While this means the Sheriff can be held
liable for the actions of his employees, it does not necessarily
mean CMS can be as well.  That is, can CMS be liable under Title
VII for the sexually harassing behavior of Officer Panico, who is
an employee of the Sheriff, not CMS?  The Seventh Circuit has
suggested in dicta the answer to this question is "No."  In Berry
v. Delta Airlines, Inc., 260 F.3d 803 (7th Cir. 2001), the court
explained that, in light of recent Supreme Court precedent such
as Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998),
and Faragher v. City of Boca Raton, 524 U.S. 775 (1998), it is
doubtful whether an employer could ever be held vicariously
liable under Title VII for sexual harassment committed by an
employee of an independent contractor.  See Berry, 260 F.3d at
811-12.  This court too has its doubts whether CMS should be held

-22-

accountable for the conduct of Officer Panico, someone over which CMS exercised no control or authority. In any event, the court finds the conduct Fink complains of does not rise to the level of an actionable hostile work environment.

To survive summary judgment on her hostile work environment claim, Fink must present evidence that would establish the allegedly hostile conduct was so severe or pervasive as to alter the conditions of her employment and create an abusive working environment. See Rizzo v. Sheahan, 266 F.3d 705, 712 (7th Cir. 2001). In assessing the severity and pervasiveness of Panico's conduct, the court looks at the totality of the circumstances, including its frequency, severity, whether it was physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interfered with Fink's work performance. See id. A work environment will not be considered "hostile" for Title VII purposes unless a reasonable person would find it offensive. See id.

To be clear, as far as CMS is concerned, the court will only consider conduct that occurred after the January 5, 1998 effective date of CMS's contract. Some of the allegations in Fink's complaint refer to incidents that took place before then, while Crusader Clinic was still under contract, but CMS certainly cannot be held to answer for what happened before it came on the scene. With that qualification, the court finds the relatively few and minor events of which Fink complains are insufficient to

establish a hostile work environment.  For example, Fink

testified Panico sent her flowers, called her up to ask her out,

and told her that another corrections officer, Captain Mike Cram,

had asked him (outside of Fink's presence) whether Panico was

having a sexual relationship with Fink.  (CMS LR 56.1(a) ¶¶ 104,

111, 115)  These incidents are simply too innocuous and tepid to

create an actionable hostile work environment.  See, e.g., Murray

v. Chicago Transit Auth., 252 F.3d 880, 889 (7th Cir. 2001)

(collecting cases).  Similarly, the fact that Fink heard about

Panico telling someone else that he was "going to bonk [Fink]

this weekend" and following it up with an obscene gesture (CMS LR

56.1(a) ¶ 106) falls under the category of "second hand

harassment," which does not carry the same impact as harassment

directed at the plaintiff.  See Russell v. Board of Trs. of the

Univ. of Ill. at Chicago, 243 F.3d 336, 343 (7th Cir. 2001).

Finally, Fink stated Panico put her in a "headlock" while walking

down a hallway and rubbed up against her in the medicine room on

one occasion around Valentine's Day.  (CMS LR 56.1(a) ¶¶ 109,

113)  While these incidents are admittedly somewhat more severe

in that they involved physical touching, there is no evidence

they were anything but brief, isolated events.  Viewed separately

or taken together, the court finds the conduct described above is

not sufficiently severe to rise to the level of a hostile work

environment under Title VII.

**4.  Retaliation**

All of the reasons why Fink cannot maintain her retaliation claims under Title VII have already been laid out more fully above, so the court will not discuss them in detail here. As for the Sheriff, it is again undisputed Fink never complained to anyone within the Sheriff's office about Panico's conduct; even more broadly, it is undisputed no one with any decision making authority on the Sheriff's behalf was aware Fink had complained about possible sexual harassment. (Sheriff LR 56.1(a) ¶¶ 50-57, 61-64) In the absence of such evidence, Fink cannot prove a causal link between her protected activity and her termination. See Maarauf v. Walker Mfg. Co., 210 F.3d 750, 755 (7th Cir. 2000) (plaintiff cannot establish causal link element in Title VII retaliation claim if there is no evidence decision maker was aware of the protected activity). An additional reason why Fink's retaliation claim fails against the Sheriff, and the reason why it does so against CMS, is that she has once again failed to rebut as pretextual these respective defendants' stated explanations for their actions — the Sheriff revoking her clearance because her comments to the inmates threatened the Jail's internal security and CMS terminating her because her clearance had been revoked. See Lalvani v. Cook County, 269 F.3d 785, 790 (7th Cir. 2001) (under Title VII retaliation claim, once plaintiff has made out prima facie case and employer has articulated legitimate, nondiscriminatory reason for adverse employment action, plaintiff must present evidence to rebut that

-25-

explanation as a pretext). The lack of any retaliatory motive on CMS's part is made even clearer by remembering that Jackie Potter, who was apparently the only person Fink talked to about Panico's conduct with any sort of supervisory authority, specifically refused to fire Fink when Arbisi asked her to do so. Again, this evidence indicates CMS had no motivation to terminate Fink at all, let alone a retaliatory one.

## IV. CONCLUSION

For the reasons stated above, the Sheriff's and CMS's motions for summary judgment are granted, Fink's motion to reconsider the striking of her response is denied, and Fink's "motion to determine the relevance of substandard health services practices within the Winnebago County Jail to the instant case" is denied as moot. The court also hereby reaffirms its previous dismissal of defendant Crusader Clinic and Count II against all defendants. This case is hereby dismissed in its entirety.

E N T E R:

_____

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED: Febury 11, 2002

-26-

# United States District Court
## Northern District of Illinois
### Western Division

Sharon Lynn Fink

v.

Winnebago County Sheriff, et al.

**JUDGMENT IN A CIVIL CASE**

Case Number: 99 C 50090

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the Winnebago County Sheriff's and Correction Medical Services' separate motions for summary judgment are granted. Fink's motion to reconsider is denied, and her "motion to determine the relevance of substandard health services practices within the Winnebago County Jail to the instant case" is denied as moot. The court also reaffirms its previous dismissal of defendant Crusader Clinic and Count II against all defendants. This case is hereby dismissed in its entirety.

All prior orders in this case are now final and appealable.

FILED-WD
02 FEB 11 PM 4: 23
CLERK
U.S. DISTRICT COURT

Michael W. Dobbins, Clerk of Court

Date: 2/11/2002

Susan M. Wessman, Deputy Clerk